```
              UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF OHIO
                    WESTERN DIVISION
```

JAMES CARVER,                      :    NO.  1:05-CV-00427
                                   :
    Plaintiff,                     :
                                   :
  v.                               :    **OPINION AND ORDER**
                                   :
CITY OF CINCINNATI, et al.,        :
                                   :
    Defendants.                    :

This matter is before the Court on Defendants' Motion to Dismiss (doc. 8), and Plaintiff's Memorandum in Opposition (doc. 9). The Court held a hearing on this matter on December 8, 2005.

**I. Background**

The facts of this case, as alleged in the Complaint, are as follows. Cincinnati police and firefighters/emergency medical technicians ("EMT's") responded to a 911 call for a suspected cardiac arrest on November 10, 2001, at 7213 Van Kirk Avenue, Apt. 2, in Cincinnati (doc. 1). Upon arriving, Defendants found Sandra Smith-Sandusky on the floor, not breathing, and pronounced her dead (Id.). In the same room, David Carver was lying on a couch (Id.). Defendants secured the apartment as a crime scene, asked all those present to leave, and took the apartment keys away from a roommate of the apartment (Id.). When the Defendants cleared the apartment of all those present, they left David Carver on the couch, asleep, unconscious and/or passed out (Id.).

Defendants searched the apartment for evidence and found

prescription bottles for various narcotic drugs, including Oxycontin (Id.). Plaintiff alleges that Defendants knew or should have known that Smith-Sandusky had overdosed on Oxycontin or other drugs, and that David Carver was in imminent danger, as he had overdosed on OxyContin and other drugs (Id.). Defendants did not attend to Carver, give him emergency medical treatment, or transport him to a medical facility (Id.). Carver later died on the couch (Id.).

Plaintiff James Carver, administrator of the estate of David Carver, brings claims for violation of Carver's substantive due process rights under the Constitution and for wrongful death under Ohio law (Id.). Carver sues the City of Cincinnati for failure to train its personnel, the police officers, and the firefighter/EMT's who were on the scene (Id.).

On September 8, 2005, Defendants filed a Motion to Dismiss Plaintiff's Complaint (doc. 8). Defendants argue they did violate Carver's constitutional rights, that the individual Defendants are entitled to qualified immunity, and the City and individual Defendants are immune from the state law claims under Ohio law (Id.). Plaintiff filed his Response in Opposition (doc. 9), and the Court heard the parties' arguments on December 8, 2005. This matter is therefore ripe for the Court's consideration.

**II.  The Motion to Dismiss Standard**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)

requires the Court to determine whether a cognizable claim has been pleaded in the complaint. The basic federal pleading requirement is contained in Fed. R. Civ. P. 8(a), which requires that a pleading "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir. 1976). In its scrutiny of the complaint, the Court must construe all well-pleaded facts liberally in favor of the party opposing the motion. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Rule 8(a)(2) operates to provide the defendant with "fair notice of what plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957). A court examines a complaint in light of the objectives of Rule 8 using the standard articulated in Jones v. Sherrill, 827 F.2d 1102, 1103 (6th Cir. 1987):

> In reviewing a dismissal under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint. Windsor v. The Tennessean, 719 F.2d 155, 158 (6th Cir. 1983), cert. denied, 469 U.S. 826 (1984). The motion to dismiss must be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle her to relief. Id. at 158; Conley v. Gibson, 355 U.S. 41 (1957).

Jones, 824 F.2d at 1103.

The admonishment to construe the plaintiff's claim liberally when evaluating a motion to dismiss does not relieve a plaintiff of his obligation to satisfy federal notice pleading requirements and allege more than bare assertions of legal conclusions. Wright, Miller & Cooper, Federal Practice and Procedure: § 1357 at 596

(1969).  "In practice, a complaint . . . must contain either direct or inferential allegations respecting all of the material elements [in order] to sustain a recovery under some viable legal theory." Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir. 1984), quoting In Re: Plywood Antitrust Litigation, 655 F.2d 627, 641 (5th Cir. 1981); Wright, Miller & Cooper, Federal Practice and Procedure, § 1216 at 121-23 (1969).  The United States Court of Appeals for the Sixth Circuit clarified the threshold set for a Rule 12(b)(6) dismissal:

> [W]e are not holding the pleader to an impossibly high standard; we recognize the policies behind Rule 8 and the concept of notice pleading.  A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim.  But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist.

Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 437 (6th Cir. 1988).

**III. Analysis**

    **A. Defendants Argue There is No Due Process Claim**

Defendants argue first there is no constitutionally protected right at stake in this case (doc. 8).  They argue under DeShaney v. Winnebago County, 489 U.S. 189 (1989), the government has no affirmative duty to act under substantive due process to guarantee minimal levels of safety and security of citizens (Id.). The two applicable exceptions to this general rule are (1) the

4

custody exception, where a person suffers injuries while in state custody and (2) the state-created danger exception, where actions of the state make a person more vulnerable to private violence. Jackson v. Schultz, No. 04-2289, 2005 U.S. App. LEXIS 24840 (6th Cir. November 18, 2005). Defendants argue neither exception is applicable in this instance (Id.).

Citing Cartwright v. City of Marine City, 336 F.3d 487 (6th Cir. 2003), Defendants argue Carver was not in their custody and the state did not impose or create the intoxication that put Carver in danger. In Cartwright, the Sixth Circuit held that police officers who gave a ride to an intoxicated person found on the side of the road did not have him in custody and did not have an affirmative duty to protect him from harm, take him into custody, or call for medical assistance. Id. Yet the facts of Cartwright are clearly distinguishable from the case at hand. Here, the intoxicated person was passed out in the midst of a crime scene where somebody was dead, and where open bottles of narcotics were found. In Cartwright, the decedent agreed to ride with the officers, and then later refused to consent to a search in order to stay in the police cruiser. Id. at 489. The Appeals Court found that decedent was not in custody because he was in no way restrained. Although the officers smelled alcohol on the decedent's breath, they saw no other signs of intoxication.

Here, the decedent in no way voluntarily consented or

refused to consent to anything, as he was out cold, on a couch.  In contrast to Cartwright, where the officers arguably dropped the decedent off at a safer location, a convenience store, than where he had been found, alongside a road, here the officers and EMT's allegedly were confronted with a person in close proximity to a dead body, and whose appearance showed he was potentially at risk of death.  The Court would find it highly unusual for a person to remain asleep in the same room where police officers and EMT's are responding to a fatality and sealing the area off as a crime scene, unless such sleep was substance-induced.  The key, however, is that here, the officers allegedly affirmatively excluded from the apartment people who might have been able to call for help for Carver.  Those excluded persons would have reasonably assumed that as the police and EMT's had arrived, Carver was in good hands, and to the extent he was at risk of a similar fate as Smith-Sandusky, he might have a chance at survival.  In Cartwright, the officers took no such action that would have prevented the decedent from obtaining help.

Similarly, Defendants argue that Sargi v. Kent City Board of Education, 70 F. 3d 907, 910 (6th Cir. 1995) applies to this case.  In Sargi, a school girl died from a known heart condition while riding a school bus.  Id. at 909.  The bus driver knew the girl was having a seizure, and kept driving the bus thinking the seizure would stop, as she had witnessed occur with another child

on a separate occasion. Id. The Plaintiff in Sargi argued that the decedent was in custody of the school bus driver, but the Sixth Circuit in granting summary judgment for defendant board of education found that such custody can only arise when the state restrains the individual, and "Decedent's medical condition and its debilitating effects. . .were not restrictions imposed or created by the state. Id. at 911. Defendants argue here that none of them made Carver intoxicated, so like the school bus driver in Sargi, they did not impose or create restrictions giving rise to constitutional liability. The Court does not find Sargi on point, however, because in that case the role of the government agent and the context she found herself in were completely different. The school bus driver's radio failed and yet she tried to call for help with a cell phone at a subsequent stop. Sargi, 70 F. 3d 907, 909. The school bus driver kept driving the little girl toward the girl's family. Id. The school bus driver, who was not an EMT, did not completely fail to react to the condition of the little girl on her bus. Id.

In contrast, the alleged facts of this case present another scenario. Sargi involved no dead bodies signaling fatal danger, no evidence of dangerous narcotics, and no affirmative exclusion of friends and neighbors who could provide help to the decedent. Such affirmative exclusion of others in closing off the crime scene and confiscating the keys, as far as the Court is

7

concerned, constituted a restraint, a taking of control and custody of the entire apartment, including its unconscious occupant, David Carver. Whatever means by which Carver may have become so dangerously intoxicated is not at all relevant to the custodial question of how the EMT's and police allegedly failed to respond to the allegedly obvious danger that Carver faced. Under the facts of the Complaint, Defendants went beyond doing nothing for Carver when they closed off others from helping Carver. The school bus driver in Sargi simply did not exclude help from others, and actually affirmatively called for help. 70 F. 3d 907, 909.

The Sixth Circuit very recently addressed a similar question where an unconscious patient placed in an ambulance was not found to be in the custody of the government actors. Jackson v. Schultz, No. 04-2289, 2005 U.S. App. LEXIS 24840 at *1 (6th Cir. November 18, 2005). The court stated that the proper custody inquiry is whether the government actors engaged in a "restraint of personal liberty," involving some state action applying force or the threat of force made with the intent of acquiring physical control. Id. at *9. The court stated that custody might be found, for example, where an unconscious drunk is handcuffed and transported to jail. Id. However, absent allegations that the decedent was not free to leave the ambulance or be removed from the ambulance, decedent's liberty was "constrained" by his incapacity, and not by Defendants. Id.(emphasis added). In this case, Carver

8

was similarly constrained by his drug-induced incapacity, but he was also constrained by Defendants. According to the Complaint, Carver was not free "to be removed" from the apartment, as Defendants had closed it off as a crime scene and no one could access him. Accordingly, the Court finds that Carver was in custody, and therefore Defendants owed him a duty in accordance with substantive due process.

The Court's conclusion is bolstered by the fact that the other exception to DeShaney, the "state-created danger" exception, applies to this case. To show a state-created danger, Plaintiff must allege (1) an affirmative act that creates or increases a risk that the decedent would be exposed to "private acts of violence," (2) a special danger to the decedent, such that the Defendants' acts placed decedent specifically at risk, and (3) that Defendants knew or should have known their actions specifically endangered the decedent. Kallstrom v. City of Columbus, 136 F.3d 1055, 1066 (6th Cir. 1988). Here the Court finds that under the allegations in the Complaint, Defendants' actions in affirmatively closing off the apartment increased the risk that Carver would be exposed to a private act of violence, a fatal overdose (whether self-inflicted or not). The Court further finds that Defendants' alleged action specifically foreclosed Carver from receiving help, and that Defendants should have known their alleged failure to act placed Carver in danger.

9

Defendants next argue that Plaintiff seems to be suing them for <u>not</u> having taken him into custody. Defendants argue, again citing <u>Cartwright</u>, 336 F.3d 487, as well as <u>Bukowski v. City of Akron</u>, 326 F.3d 702, 712 (6th Cir. 2003)(no finding of deliberate indifference where city failed to take plaintiff into custody although she was mentally challenged, found in a stranger's home miles from her home, and had been repeatedly raped by a man she referred to as her boyfriend), that Plaintiff appears to be seeking relief because Defendants should have taken Carver into custody by transporting him to a medical facility, but failed to do so (doc. 8). The Court finds such argument lacking in merit, as it has found above that under the allegations in the Complaint, Defendants clearly took Carver into custody when they closed off the apartment as a crime scene. After Carver was in Defendants' custody, a duty arose to seek help, whether to provide it on the scene or to transport him elsewhere.

Finally, Defendants argue they faced unavoidable liability in this case, because had they helped Carver, they could have been subject to a lawsuit for improper arrest, false imprisonment, battery, and violation of privacy. As addressed in oral argument, the Court finds such argument lacking in merit. Carver was out cold in the middle of a crime scene. The officers had probable cause to suspect he was involved in illegal drug activity, or should be questioned in relationship to Smith-

10

Sandusky's death.  Defendants were not subject to unavoidable liability.

### B. Defendants Argue They Are Entitled Immunity from Lawsuit

#### 1. Qualified Immunity

Defendants argue that the individual Defendant police officers and EMT's are entitled to qualified immunity because they did not violate clearly established constitutional rights of which a reasonable person would have known.  Defendants argue under Hunter v. Bryant, 502 U.S. 224, 229 (1991), that the qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent and those who knowingly violate the law."  Defendants argue that if their actions fell within a "hazy border" between acceptable and unconstitutional care, it was by no means established that failing to provide medical care to a sleeping person in the vicinity of a person who died of cardiac arrest would violate the Constitution.

Plaintiff responds that the individual Defendants made a conscious decision to allow an unconscious person under their sole custody to die needlessly (doc. 9).  Plaintiff argues that such action was negligent and reckless, such that a reasonable person in Defendants' shoes would have acted differently (Id.).

Qualified immunity is a long-standing doctrine that provides officials "immunity from [the indignities of] suit rather than a mere defense to liability."  Saucier v. Katz, 533 U.S. 194,

200-201 (2001).  In sum, it protects officials from being held liable for constitutional violations they may have committed but that, due to a lack of previous pronouncement by a court recognizing the particular right in question, they had no reason to know they were doing so.  Under Supreme Court precedent, determining whether a government actor is entitled to qualified immunity is a two-step process.  First, the Court must ascertain whether the alleged conduct violated a constitutional right.  See Chavez v. Martinez, 538 U.S. 760, 766 (2003); Saucier, 533 U.S. at 201.  In other words, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Saucier, 533 U.S. at 201.  If it does not, then the inquiry is at an end: the government actor is entitled to qualified immunity from suit.  See Chavez, 538 U.S. at 766; Saucier, 533 U.S. at 201 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.")  If, however, the complained-of conduct would violate one or more of the plaintiff's constitutional rights, a second inquiry is required: The Court must ascertain whether the particular right allegedly violated was clearly established at the time the violation occurred.  Saucier, 533 U.S. at 201.  The Supreme Court has, however, circumscribed the scope of the review of this issue:

> This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad

> general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable.
>
> [W]e emphasized in Anderson "that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

Saucier, 533 U.S. at 201-202 (citations omitted); see also Wilson v. Layne, 526 U.S. 603, 615 (1999)("[A]s we explained in Anderson, the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established").

      Taking all inferences in favor of Plaintiff, the Court finds that a reasonable EMT and police officer would not have allowed a sleeping person in the middle of a fatal crime scene to have gone unaddressed and unattended.  Plaintiff's Complaint alleges a plain incompetence of the sort that should not merit the protection of qualified immunity.  There is nothing hazy about the unconstitutionality of cutting off access to medical care without providing an adequate alternative. Beck v. Haik, 377 F.3d 624, 643 (6th Cir. 2004).  Reasonable officers and EMT's would have understood that to close off the apartment as a crime scene, when confronted with both a dead body and open bottles of narcotics,

13

while leaving Carver without access to medical care, could potentially deprive Carver of his right to life. The Court therefore finds Plaintiff's position well-taken and denies the individual Defendants qualified immunity.

### 2. Defendants Argue the City is Immune Under <u>Monell</u>

As for the City of Cincinnati, Defendants argue there is no respondeat superior under <u>Monell v. Dept of Social Services</u>, 436 U.S. 658, 691 (1978). Defendants argue Plaintiff has failed to sufficiently plead the City had an unconstitutional policy that proximately caused a constitutional injury to the decedent. Defendants argue Plaintiff's allegation of an unconstitutional policy of failure to train is too vague and conclusory.

Plaintiff responds that under Fed. R. Civ. P. 8(a), he is only required to provide a short and plain statement of his claim (doc. 9). Plaintiff argues he has alleged that the City's failure to train its employees showed deliberate indifference to the rights of Carver, and such allegation is adequate to give rise to liability under Section 1983. Plaintiff argues this issue should be addressed by summary judgment after discovery.

Plaintiff's position is well-taken. The Court finds Plaintiff has adequately pled a claim for failure to train. Accordingly, it is inappropriate to dismiss the City of Cincinnati from the case.

14

### 3. Defendants Invoke Statutory Immunity

Finally, Defendants argue the City is entitled to statutory immunity from tort liability under O.R.C. § 2744, because the actions/inactions in question in this case fall within government functions, and none of the enumerated statutory exceptions apply here. As for the individual Defendants, they argue they are immune from tort liability unless the acts were committed with malicious purpose, in bad faith, or in a wanton or reckless manner. Defendants argue Plaintiff has not alleged any facts indicating they acted in such a way. They state, citing <u>Fabrey v. McDonald Village Police Department</u>, 70 Ohio St. 3d 351, 356 (1994), that mere negligence does not constitute wanton misconduct, unless the evidence establishes "a disposition to perversity on the part of defendant."

Plaintiff appears to concede that the City is entitled to statutory immunity on his tort claims, but that statutory immunity does not eliminate his constitutional claim against the City for failure to train its employees (doc. 9). Plaintiff argues that his Complaint raises allegations that the individual Defendants acted or failed to act with "malicious purpose, in bad faith, or in a wanton and reckless manner" such that statutory immunity does not apply (<u>Id</u>.).

This Court, in earlier opinions predicting how the Ohio Supreme Court would rule, found Chapter 2744 to be unconstitutional

15

under the Ohio Constitution (See e.g., Kammeyer v. City of Sharonville, 311 F.Supp.2d 653 (S.D. Ohio 2003); Owensby v. City of Cincinnati, No. 1:01-CV-00769, 2004 U.S. Dist. Lexis 9444 (S.D. Ohio May 19, 2004)). The Ohio Supreme Court has yet to offer clarification on the question. The Court need not rely on its earlier finding that Chapter 2744 is unconstitutional, because the facts as alleged by Plaintiff show that even if Chapter 2744 is ultimately deemed constitutional, it is inapplicable here.

Chapter 2744.02(A)(1) provides a general immunity for acts or omissions of employees of a political subdivision in connection with the performance of governmental functions. Further, the Chapter provides that "The provision or nonprovision of police, fire, emergency medical, ambulance, and rescue services or protection" constitute "governmental functions." O.R.C. § 2744.01(C)(2). However, as signaled by Plaintiff, there is an exception to immunity where an employee's acts or omissions "were with a malicious purpose, in bad faith, or in a wanton and reckless manner." O.R.C. § 2744.03 (A)(6)(b).

Plaintiff's Complaint includes allegations from which a jury could infer Defendants' conduct in relation to Carver was with malicious purpose, in bad faith, or wanton and reckless. Defendants allegedly cleared a deadly crime scene of observers, left Carver on a couch in the same room as a dead body, discovered evidence of dangerous narcotics that would lead a reasonable person

16

to infer that both decedent and Carver had overdosed, and apparently did nothing for Carver. These alleged facts, taken in light most favorable to Plaintiff, show Defendants allegedly acted in such a way that they should have been conscious that their failure to intervene on behalf of Carver subjected him to substantial risk of serious injury or death. Such alleged facts show that Defendants' conduct can be viewed as wanton under Ohio law. <u>Fabrey v. McDonald Village Police Dept.</u>, 70 Ohio St. 3d 351, 356, 639 N.E. 2d 31, 35 (1994), <u>Hawkins v. Ivy</u>, 50 Ohio St. 2d 114, 363 N.E. 2d 367 (1977), 1 Ohio Jury Instructions, (2005) Section 7.40 ("Wanton misconduct implies a failure to use any care for the plaintiff and an indifference to the consequences, when the probability that harm would result from such failure is great, and such probability is known, or ought to have been known, to the defendant.").

**IV. Conclusion**

Having reviewed this matter, and having heard the parties' oral argument, the Court concludes it is proper to deny Defendants' Motion to Dismiss. Construing all well-pleaded facts liberally in favor of Plaintiff, <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974), the Court finds adequate allegations to support a claim for deprivation of David Carver's substantive due process rights in Defendants' alleged sealing off as a crime scene the apartment where Carver lay dying, without providing him medical care.

Plaintiff has similarly adequately pled a claim against the City for failure to train its employees in confronting such a situation. The individual Defendant officers and EMT's are not entitled to qualified immunity because their alleged actions in cutting off access to medical care without providing an adequate alternative were unreasonable and offend due process. <u>Beck v. Haik</u>, 377 F.3d 624, 643 (6th Cir. 2004). Neither are the individual Defendants entitled to statutory immunity, as their alleged actions, taken in a light most favorable to Plaintiff, could constitute wanton conduct in disregard of the serious risk to David Carver's life.

      Accordingly, the Court DENIES Defendants' Motion to Dismiss (doc. 8).

      SO ORDERED.

Dated: December 13, 2005    <u>/s/ S. Arthur Spiegel</u>
                                      S. Arthur Spiegel
                                      United States Senior District Judge

19